## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**DARVAL LEDET**                                                **CIVIL ACTION**

**VERSUS**                                                        **NO. 23-7270**

**KEITH COOLEY, WARDEN**                              **SECTION: "E"(5)**

### <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Darval Ledet, is a convicted inmate housed at the Allen Correctional Center in Kinder, Louisiana.    In December 2018, he was charged by bill of information with attempted armed robbery of Daisha Patin with a firearm in violation of La. R.S. 14:27, La. R.S. 14:64, and La. R.S. 14:62.3 (count one); attempted second-degree murder of Daisha Patin in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count two); attempted armed robbery of Roy A. Cain with a firearm in violation of La. R.S. 14:27, La. R.S. 14:64, and La. R.S. 14:62.3 (count three); attempted second-degree murder of Roy A. Cain in violation of La. R.S. 14:27 and La.

R.S. 14:30.1 (count four); and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count five).[1]    On January 3, 2019, he was arraigned, entered a plea of not guilty on all counts, and the preliminary examination was continued without date.[2]

On September 11, 2019, the State placed its plea offer on the record.    The minute entry for that date reflects Ledet's acknowledgment that he understood the plea offer and would discuss his options with his retained attorney.[3]    On September 12, 2019, the State amended the bill of information to enter a *nolle prosequi* on count four, one of the attempted second-degree murder counts, pursuant to a negotiated plea agreement.[4]    On that same date, Ledet withdrew his plea of not guilty and pleaded guilty as charged on the four remaining counts.    As part of the plea agreement, the State agreed not to file a multiple-offender bill.[5]    Ledet was sentenced to imprisonment at hard labor for 20 years on counts one and three—with an additional five-year consecutive sentence on each count for use of a firearm—without benefit of parole, probation, or suspension of sentence; imprisonment at hard labor for 25 years on count two, without benefit of parole, probation, or suspension of sentence; and imprisonment at hard labor for 20 years on count five, without benefit of

---

[1]  ECF No. 15-1 at 14, Bill of Information, Parish of Jefferson.    The State submitted the record electronically in one volume. ECF No. 15, 15-1, Lodging of State Court Record Materials.

[2]  ECF No. 15-1 at 5, Minute Entry, 1/3/2019.

[3]  ECF No. 15-1 at 13, Minute Entry, 9/11/2019.

[4]  ECF No. 15-1 at 34; see also ECF No. 15-1 at 35, Minute Entry, 9/12/2019.

[5]  ECF No. 15-1 at 38, Waiver of Constitutional Rights Plea of Guilty.

parole, probation, or suspension of sentence.    The trial court also assessed fees in the amount of $1,250.00.    The sentences were ordered to run concurrently with each other and with another sentence he was serving.[6]

On May 7, 2020, Ledet filed an application for post-conviction relief and a memorandum in support raising several claims of ineffective assistance of counsel.[7]    On June 1, 2020, the state district court denied his application for post-conviction relief as premature, dismissed it without prejudice, and granted him an out-of-time appeal.[8]

On appeal, his appointed counsel filed an *Anders* brief asserting that she had thoroughly reviewed the trial court record and could not find any non-frivolous issues to raise on appeal.[9]    The court of appeal conducted an independent review of (1) the bill of information to ensure he was properly charged; (2) the minute entries to ensure he was present at all crucial stages of the proceedings; (3) the jury composition and verdict to ensure the sentence was legal; and (4) all pleadings in the record and all transcripts to determine if any ruling provided an arguable basis for appeal.    As part of its review and

---

[6]  ECF No. 15-1 at 431, Sentencing Minute Entry, 9/12/2019.    Ledet did not file a motion to reconsider the sentences, and he did not file a motion for appeal within 30 days of September 12, 2019. He also did not request an out-of-time appeal.

[7]  ECF No. 15-1 at 48, First Uniform Application for Post-Conviction Relief.

[8]  ECF No. 15-1 at 52, State District Court Order dismissing application for post-conviction relief and construing request as a timely filed application for an out-of-time appeal.

[9]  *Anders v. California*, 386 U.S. 738 (1967); *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241 (per curiam).

determination that indeed there were no non-frivolous issues for direct appeal, the appellate court found no constitutional infirmity or any irregularity in the guilty pleas that would render them invalid.

The court of appeal also considered Ledet's four *pro se* assignments of error:    (1) the guilty plea was coerced because the State gave him 24 hours to accept the plea agreement and did not respond to his motion to disclose impeaching information; (2) the plea was unknowing and unintelligent because he was not informed that he would be unable to withdraw the plea and that he had the right to enter a plea of not-guilty; (3) he was allowed to enter an agreement predicated on the false assurance by his counsel that he would not have to serve the entire sentence based on the State not filing a multiple bill, but he was still ordered to serve the full sentence due to his prior convictions; and (4) his attorney rendered ineffective assistance in allowing him to enter into a plea agreement that violated double jeopardy.    Additionally, Ledet argued as part of his ineffective assistance claim that his "substantial rights were systematically neglected" as reflected by defense counsel's repetitive waiver of his presence at court hearings without consent.    The appellate court reiterated that it found no constitutional infirmity or irregularity in the trial court's acceptance of Ledet's guilty pleas that would render them invalid.    The appellate court addressed a single claim of ineffective assistance, finding sufficient evidence in the record to reject his assertion that counsel was ineffective for waiving his presence at court hearings without his consent.    To the extent Ledet alleged ineffective assistance of counsel regarding counsel's advice to plead guilty, the court of appeal found the claims better suited for post-

conviction relief proceedings where evidence could be adduced at a hearing, if necessary. The final claim concerning double jeopardy was deemed abandoned because he failed to brief any argument in support.    On January 27, 2021, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[10]    Ledet did not seek further review by the Louisiana Supreme Court.

On or about April 8, 2021, Ledet filed his second application for post-conviction relief with the state district court.[11]  In that application, he claimed that he was denied effective assistance because counsel: (1) spent less than five total hours speaking with him concerning relevant case law; (2) failed to offer any meaningful adversarial challenge by filing motions that questioned the prosecution's evidence against him; (3) failed to conduct appropriate investigations to develop a defense, specifically concerning DNA evidence improperly procured from petitioner and improperly identified by the crime lab; (4) failed to request documents pertinent to the comparison and results of DNA retrieved from a weapon; (5) failed to investigate why only two swab boxes containing one reference buccal swab each was tested for comparison when two swab boxes with a total of three reference buccal swabs were taken from petitioner to show the DNA samples were tainted and unreliable and should have been suppressed; and (6) adamantly advised petitioner to plead guilty despite petitioner's repeated objections to doing so.    In July 2021, he moved to supplement the

---

[10]  *State v. Ledet*, 20-KA-258 (La. App. 5 Cir. 1/27/21), 310 So.3d 810; ECF No. 15-1 at 316.

[11]  ECF No. 15-1 at 339, 346 (PCR with Memorandum in Support).

application for post-conviction relief with additional argument on several claims.[12]    On July

29, 2021, the state district court granted the request to supplement and ordered the State to

respond to the petition, as supplemented.[13]    The State sought multiple extensions of time

to respond.    Ledet filed a motion to compel the State to respond or to release him from

custody.[14]    His motion was denied on October 12, 2021.[15]    The State filed a response on

November 29, 2021.[16]    On December 6, 2021, the state district court denied his application

for post-conviction relief.[17]    On February 15, 2022, the Louisiana Fifth Circuit Court of

Appeal denied his supervisory writ application.[18]    On January 18, 2023, the Louisiana

Supreme Court denied his related writ application.[19]

---

[12]  ECF No. 15-1 at 379-90.

[13]  ECF No. 15-1 at 420.

[14]  One of Ledet's filings objecting to a request by the State for a second extension of
time was sent to the Louisiana Fifth Circuit Court of Appeal.    That "omnibus motion" was
then directed to the state district court.    The motion was denied on December 6, 2021, the
same date the PCR application was denied. ECF. No. 15-1 at 520. Subsequently, Ledet's
motion, postmarked December 9, 2021, was received by the district court and filed in
January 2022.    The court once again denied the motion.    ECF No. 15-1 at 554.

[15]  ECF No. 15-1 at 445.

[16]  ECF No. 15-1 at 465.

[17]  ECF No. 15-1 at 518-19, PCR Order.

[18]  ECF No. 15-1 at 659, *State v. Ledet*, No. 22-KH-38 (La. App. 5 Cir. Feb. 15, 2022).
His supervisory writ application may be found at ECF No. 15-1, p. 559.

[19]  *State v. Ledet*, 2022-KH-00498 (La. 2023), 353 So.3d 127 (denying ineffective
assistance of counsel claims) (ECF 15-1 at 689); *State v. Ledet*, 2022-KH-00628 (La. 2023),
353 So.3d 129 (denying as moot and referencing No. 22-00498) (ECF No. 15-1 at 687). His
supervisory writ application filed on April 3, 2022, may be found at ECF No. 15-1, pp. 667
and 748 with Exhibits at 771 (Appendix). Ledet supplemented his writ application (22-KH-

By application signed and dated June 18, 2023, Ledet submitted his federal petition for habeas corpus relief.[20]  He claims that his guilty plea was involuntary due to ineffective assistance of counsel.    He contends trial counsel was ineffective in failing to investigate his case fully and pursue various pretrial motions before advising him to plead guilty.    The State does not challenge timeliness or assert that the claims are unexhausted or procedurally barred.[21]    The State argues that he is not entitled to relief on the merits.    Ledet filed a reply to the State's response.[22]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

0628) on May 23, 2022. ECF No. 15-1 at 893-903.    His guilty plea transcript from the proceedings held on September 12, 2019, may be found at ECF No. 15-1 at 788-801 (Appendix C).

[20] ECF No. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[21] ECF No. 18, State's Response at 4-7.

[22] ECF No. 20.

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court

precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

Ledet contends that trial counsel was constitutionally ineffective for not subjecting the State's case to meaningful adversarial testing or conducting adequate investigation to refute the State's evidence that was "marred by insufficient chain of custody."[23]    Instead, counsel convinced him to enter a guilty plea to the charges, thus rendering ineffective assistance during plea negotiations.    Specifically, he argues that counsel did not (1) ensure that a preliminary hearing was held; (2) file a motion to suppress the only physical evidence allegedly linking him to the crimes, and (3) ensure that a pending motion for disclosure of

---

[23] ECF No. 1-2 at 7.

impeachment information was heard and ruled on by the court.[24]    He challenges the guilty

plea because he ultimately "yielded" to counsel's advice, but had only 24 hours to consider

the negotiated plea offer, and trial counsel persuaded Ledet's mother to "help him adamantly

advise" Ledet to plead guilty.[25]

      The ineffective-assistance claims were presented to the state courts in his application

for post-conviction relief.    The state district court denied the claims finding that they were

vague and conclusory, and he did not show any deficiency by counsel or that he would have

insisted on going to trial absent errors by counsel.    The Louisiana Fifth Circuit also denied

relief, holding that counsel did not render deficient performance under *Strickland* and that

he failed to show that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial.    In rejecting the

claims for relief, the Louisiana Fifth Circuit Court of Appeal explained:

---

[24]    Ledet was initially represented by public defenders and later retained private defense counsel, Joseph R. McMahon, III. ECF No. 15-1 at 26-28.

[25]    ECF No. 1-2 at 4. In his "statement of the facts" section, he mentions that counsel waived Ledet's presence at all scheduled court appearances without his consent, thus obstructing him from raising contemporaneous objections.    However, he does not frame the issue as a claim for relief under the section arguing ineffective assistance of counsel and the record indicates he chose not to pursue the claim. The claim was not exhausted in the state courts. It was raised on direct appeal, where the state appellate court determined the record showed that Ledet was present for his arraignment, guilty plea, and sentencing proceedings, as required under state law, and that counsel's waiver of his presence for other court proceedings did not constitute deficient performance under *Strickland*.    But he did not present the claim to the Louisiana Supreme Court.    Nor did he raise the claim again in his application for post-conviction relief.    The Court will therefore address only the properly framed ineffective-assistance claims based on counsel's alleged failure to investigate and challenge the State's evidence in the context of his alleged involuntary guilty plea.

In his writ application, relator argues, as he did in the district court, that counsel rendered ineffective assistance. Specifically, relator maintains that counsel advised him to plead guilty despite the weakness of the State's case. In relator's view, counsel should have investigated the chain of custody related to the DNA evidence. Relator also points to the pretrial motions concerning the defense's request for the State's impeachment evidence and jury instructions as proof of relator's willingness to have his case tried before a jury rather than pleading guilty.

*          *          *

In his writ application, relator claims that the *only* evidence linking him to the instant offenses was "marred by an insufficient chain of custody," which counsel failed to challenge before advising him to plead guilty. In support of his claim, relator maintains that the chain of custody report states that the DNA swabs taken from a handgun were labeled 11-A, but a lab report indicates that the fired cartridge cases were also labeled 11-A. However, despite relator's claim to the contrary, in addition to the DNA evidence—which the State supported by signed search warrants, chain of custody documents from the Jefferson Parish Sheriff's Office, and reports from the crime lab—the State had other evidence connecting him to the instant offenses. Specifically, one victim identified relator as having the same facial features from the nose down and the same beard as relator. Both victims also made a photographic identification of the vehicle and the firearm used during the armed robbery.

Additionally, in response to relator's contention that his counsel was deficient because he failed to file motions challenging the State's case and/or challenging the procedures for obtaining DNA evidence and the chain of custody, the filing of pre-trial motions is squarely within the ambit of trial strategy. *State v. Jones*, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 325 (citing *State v. Hollins*, 99-278 (La. App. 5 Cir. 8/31/99), 742 So.2d 671, 681, *writ denied*, 99-278 (La. 1/5/01), 778 So.2d 587). Defense counsel's decision as to which motions to file form a part of trial strategy. *State v. Griffin*, 14-450 (La. App. 5 Cir. 12/16/14), 167 So.3d 31, 49. Hindsight is not the proper perspective for judging the competence of counsel's trial decisions and an attorney's level of representation may not be determined by whether a particular strategy is successful. *Jones*, 33 So.3d at 325; *see also Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Here, even assuming that the labels of the DNA swabs and the fired cartridge cases shared the same label number, we find relator's attack on the integrity of the chain of custody speculative and conclusory at best. *See* La. C.Cr.P. art. 930.2.[26]  Consequently, we find that

---

[26]  La. C.Cr.P. art. 930.2 states, "The petitioner in an application for post-conviction

11

counsel did not commit an unprofessional error by failing to file a motion to suppress on those grounds.

With respect to relator's claim that the outstanding motion for the State's impeachment evidence and the defense request for jury instructions, suggesting that relator desired a jury trial rather than a guilty plea, relator has failed to include a copy of his guilty plea transcript in the instant application for this Court's review. *See* La. C.Cr.P. art. 930.2. As this Court noted on direct review of relator's guilty plea,[27] during the plea colloquy, defendant indicated that no one was forcing or threatening him to plead guilty, [and] that he was satisfied with his attorney's representation." *Ledet*, 310 So.3d at 818. This Court further noted that "defendant received a great benefit from pleading guilty in that the State agreed not to multiple bill him, and the sentences were ordered to run concurrently." *Id*. at 821.

Based on our review of the writ application, we find that relator has failed to carry his burden of showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. at 370. Accordingly, we find relator's claim of ineffective assistance of counsel is without merit and deny the writ application.[28]

Finally, the Louisiana Supreme Court denied relief because he failed to show he was denied effective assistance of counsel during plea negotiations.   Because such claims present mixed questions of law and fact, Ledet is entitled to federal habeas relief only if he shows that the state court decision denying the claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th

---

relief shall have the burden of proving that relief should be granted."

[27]   On appeal, relator raised a *pro se* assignment of error challenging the validity of his guilty plea. *Ledet*, 310 So.3d at 820.

[28]   ECF No. 15-1 at 660-62 (footnotes in original).

Cir. 2019); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).    For the following reasons, he has not made that showing.

The state courts analyzed the claims under *Strickland v. Washington*, the proper controlling framework    *See* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).    Under *Strickland*, a petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Id*. at 697.    To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).    When assessing whether counsel's performance was deficient, a federal court must always be mindful that "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."    *Harrington v. Richter*, 562 U.S. 86, 110, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Therefore, "[t]o establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness."    *Id*. at 104 (quotation marks omitted).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In the context of guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).

If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

The burden is even higher and more demanding on federal habeas review from a judgment on the merits issued by the state courts.    As the Supreme Court has explained, when an ineffective assistance claim is presented in a federal habeas petition:

> [T]he question is whether [the state court] decision involved an "unreasonable application of " this Court's precedent. To meet that standard, a prisoner must show far more than that the state court's decision was "merely wrong" or "even clear error." *Virginia v. LeBlanc*, 582 U.S. ––––, ––––, 137 S.Ct. 1726, 1728, 198 L.Ed.2d 186 (2017) (per curiam) (internal quotation marks omitted). The prisoner must show that the state court's decision is so obviously wrong that its error lies "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103, 131 S.Ct. 770. Congress "meant" this standard to be "difficult to meet." *Id*., at 102, 131 S.Ct. 770.

*Shinn v. Kayer*, 592 U.S. 111, 118 (2020).    The overriding question in a federal habeas corpus proceeding is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."    *Richter*, 562 U.S. at 105, 131 S.Ct. 770.    The federal court must accord the state-court decision "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."    *Id*. at 101, 131 S.Ct. 770; *see also id*. at 105, 131 S.Ct. 770 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.").    As a result, in effect, the federal court must "afford *both* the state court *and* the defense attorney the benefit of the doubt."    *Woods v. Etherton*, 578 U.S. 113, 117, 136 S.Ct. 1149, 194 L.Ed.2d

333 (2016) (emphasis added; quotation marks omitted).

"[O]nce a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived. This includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (citations omitted).    Ledet is invoking this exception, given that each of his ineffective-assistance claims implies that he was offered substandard advice from counsel due to the lack of adversarial testing and thorough investigation of the evidence, leaving a guilty plea (against his will) as his only option.

As for his general assertion that counsel's investigation was inadequate, Ledet must prove it by showing that a more thorough investigation would in fact have revealed additional evidence beneficial to the defense.    *See*, *e.g.*, *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) ("A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate and present mitigating evidence without adducing what the investigation would have shown.").    However, Ledet does not point to any additional evidence that counsel failed to uncover.    He suggests only that the State's evidence was weak and counsel's advice to plead guilty was bad advice.    His allegations plainly fall short of proving inadequate investigation by counsel.

Ledet also claims that counsel's adversarial failures regarding the State's evidence led to unsound advice at the plea stage.[29]    First, he argues that counsel should have enforced

---

[29]  His claims pertaining to the individual motions were exhausted under the rubric of failure to investigate and challenge the evidence, and the State does not dispute that, but

his request for preliminary hearing and ensured that a hearing was held.    The record reflects that on January 27, 2018, the public defender filed an "Omnibus Motion and Order for Pre-Trial Motions," including a motion for preliminary hearing.[30]    The omnibus pretrial motion hearing was set for January 3, 2019.    On January 3, 2019, Ledet was arraigned.    At the time of his arraignment, the preliminary exam was continued without date.[31]    On January 24, 2019, the State provided discovery to the defense.    The minute entry reflects that the pretrial hearing was marked satisfied.[32]    Private counsel later enrolled on Ledet's behalf and negotiated the plea agreement for him.    The record does not show that a preliminary examination ever occurred.    Defense counsel presumably waived the motion for preliminary examination once discovery was provided that sufficiently informed him of the nature of the evidence against Ledet.    Nevertheless, Ledet maintains that defense counsel should have insisted on a preliminary hearing, because "the only material evidence against [him] was marred by insufficient chain of custody that violated Louisiana law… and the exclusion of the evidence would almost certainly had led to [his] release and/or dismissal of the charges…[.]"[33]

---

regardless, a federal habeas court may deny relief on an unexhausted claim that is plainly meritless. 28 U.S.C. § 2254(b)(2).

[30]  ECF No. 15-1 at 19, Omnibus Motion and Order for Pre-Trial Motions.

[31]  ECF No. 15-1 at 5, Minute Entry, 1/3/2019.

[32]  ECF No. 15-1 at 6, Minute Entry, 1/24/2019.

[33]  ECF No. 1-2 at 7. Ledet continually refers to the DNA as the only evidence against him and disputes the state appellate court's reference in its order denying relief to other evidence by the State connecting him to the crime (ECF No. 15-1 at 661).    However, the

Ledet argues that the preliminary examination would have led to the exclusion of invalid DNA evidence and/or dismissal of charges and a different outcome in his case. However, even though he has both a constitutional and statutory right to a preliminary examination under state law, the primary function of the preliminary examination is to confirm that "probable cause exists to hold the accused in custody or under bond obligation." *State v. Moore*, 134 So.3d 1265, 1273 n. 11 (La. App. 2 Cir. 2014), *writ denied*, 151 So.3d 598 (La. 2014) (citing *State v. Holmes*, 388 So.2d 722, 724 (La. 1980); La. Const. Ann. art. I, § 14; La. C.Cr.P. art. 292)).    Absent probable cause, a defendant might be released from custody or bail, but the State may still proceed with criminal charges against the person.    La. C.Cr.P. art. 296; *State v. Lewis*, 28 So.3d 548, 552 (La. App. 4 Cir. 2009); *State v. Mayberry*, 457 So.2d 880, 882 (La. App. 3 Cir. 1984).    Ledet has not identified any information or evidence that might have been obtained from the State during a preliminary hearing that was not already given to the defense by the State in the discovery.    Nor would a preliminary hearing have led to an exclusion of evidence or dismissal of charges as Ledet claims.    When no preliminary examination occurs, "the issue is moot after conviction, at least in the absence of prejudice."    *State v. Washington*, 363 So.2d 509, 510 (La. 1978).

No prejudice resulted in this case when defense counsel decided not to seek a preliminary hearing at Ledet's request.    Here, the absence of a preliminary hearing and probable-cause determination did not impair counsel's ability to review the alleged

---

state-court record supports the reference to additional evidence as described by the two victims. See ECF No. 15-1 at 60-64.

problematic evidence identified by Ledet and offer sound advice during plea negotiations. Ledet even concedes that he mentioned the chain of custody related to the DNA evidence to his attorney and candidly expressed his reservations with counsel before agreeing to plead guilty.[34]    Ledet cannot establish that, but for counsel's failure to insist on a preliminary examination, he would have gone to trial rather than pleading guilty.

In a similar vein, Ledet argues that counsel should have challenged the DNA evidence, specifically the discrepancies between the chain of custody and the firearm examiner's scientific-analysis report, by filing a motion to suppress.    Ledet argues that success on the motion "would almost assuredly precluded [sic] his conviction."[35]    He also contends that counsel should have ensured that a hearing was held on the motion for disclosure of impeaching information, which counsel filed at Ledet's request about a week before Ledet pleaded guilty.[36]    Ledet maintains that counsel failed to demonstrate through these pretrial motions that the marred chain of custody tainted the DNA results, rendering them inadmissible to prove he committed the crimes, and that the DNA evidence was the only material evidence physically linking him to the crimes.    Given these omissions, he claims, counsel could not have provided him reasonably competent advice to plead guilty.

The state courts rejected Ledet's claim that defense counsel was constitutionally

---

[34]  ECF No. 1 at 16.

[35]  ECF No. 1-2 at 11.

[36]  ECF No. 15-1 at 30 (Motion for Disclosure of Impeaching Information filed 9/3/2019).

ineffective for advising him to plead guilty without first challenging the chain of custody for the DNA evidence by a motion and hearing to suppress.[37]    This claim is predicated on Ledet's purely theoretical contention that the faulty chain of evidence would preclude admission of the evidence *at trial*.    However, the focus here is the entry of a guilty plea, not trial.    Furthermore, as the State points out, chain of custody issues generally impact the weight of the evidence at trial, rather than admissibility.    *See*, *e.g.*, *Dixon v Hooper*, Civ. Action No. 23-374, 2023 WL 6457213, at *12 (E.D. La. Sep. 19, 2023), *adopted*, 2023 WL 6442774 (E.D. La. Oct. 3, 2023).    Counsel is not constitutionally ineffective for failing to make futile motions.    *Miller v. Thaler*, 714 F.3d 897, 904 n. 6 (5th Cir. 2013) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)).

Specifically as to chain of custody, Ledet alleges:

An adequate investigation would have revealed that the chain of custody form used in the onset of the case investigation to log collected evidence by the Gretna Police Department (GPD), identified a DNA sample taken from the weapon said to be used in the crime as "Exhibit No. 13; Quantity 1; Swab Box contained 2 cotton swabs from Exh. 11 (DNA)." This specific Exhibit No. 13 was transferred to the Jefferson Parish Sheriff's Office Crime Laboratory (JPSOCL) through chain of custody as "Specimen #13 One sealed envelope containing two swabs from the grip of one Glock model 20, 10mm caliber semiautomatic pistol, SN: NVH596," but this "Specimen #13" changed multiple evidence custodians' hands but never was received into Jefferson Parish

---

[37] The Court does not focus on whether a motion to suppress is an appropriate mechanism for raising the chain-of-custody issue, and will assume, for the sake of argument, that the question raised by Ledet is simply whether any motion should have been filed and pursued by defense counsel to exclude the evidence at trial before counsel advised him to enter a guilty plea.    Nor will the Court engage in an extraneous discussion as to the applicability of state evidentiary rules of admissibility cited by Ledet, to the extent he argues inadmissibility under state law, Louisiana Revised Statute 15:499(A)(2). ECF. No. 1-2 at 9.

Sheriff's Office DNA Laboratory (JPSODL) to be compared to Mr. Ledet's reference DNA profile identified as "Exhibit No. 16" in the GPD chain of custody and Specimen #16 in the JPSOCL chain of custody, instead an egregiously placed duplicate of Specimen #13 identified as "Item # 011-A" in the JPSOCL chain of custody, which is not logged by GPD chain of custody as being collected at the onset of the case investigation, was delivered through JPSOCL chain of custody to the JPRDL to be compared to Mr. Ledet's reference DNA profile, in which yielded positive results for the prosecution.

Further review of the JPSOCL chain of custody and JPSOCL Scientific Analysis Report, respectively, would reveal that Firearm and Tool Mark Examiner, Emily Terrebonne, who's notice of intent to call expert witness says she would be "tendered as an expert in firearms and tool mark examination and her work with the ballistic evidence in this case," electronic signature was used to receive into JPSOCL chain of custody for this case, "Item #011-A" – One sealed envelope containing two swabs from the grip of one Glock model 20, 10mm caliber semiautomatic pistol, SN: NVH596, from evidence custodian Beverly Chaisson but Emily Terrebonne in her JPSOCL Scientific Analysis Report refute Item #011-A as being "fired cartridge cases."

*          *          *          *

Therefore, when the State's Response in Opposition to Mr. Ledet's Application for Post-Conviction Relief (APCR) said that "firearms examiner subsequently labelled test-fired cartridge casing as crime laboratory specimen 11-A/11-B in her scientific analysis report is immaterial," the state was incorrect since the firearm examiner's electronic signature had indeed, as well, had been used to receive what had been identified in JPSOCL chain of custody as "Item #011-A – One sealed envelope containing two swabs from the grip of one Glock model 20, 10mm caliber semiautomatic pistol, SN: NVH596," to firearm examiner Emily Terrebonne stark contradiction.[38]

In contrast, the State established that Ledet's premise was factually incorrect.    The State

verified the appropriate collection and chain of custody through documentation in the state

courts, which included the search warrant, crime scene reports referencing the collection of

---

[38]  ECF No. 1-2 at 7-9 (citing Exhibit C, D and E at ECF No. 1-3 at 7-17) (citations omitted).

evidence; laboratory photographs taken of the items at the Jefferson Parish Sheriff's Office Regional DNA Laboratory; analyst's notes confirming the items received by the lab; a DNA report referencing receipt of DNA lab items 11A and 16; and a chain of custody form.[39]    The state courts considered Ledet's allegations and found his attack on the integrity of the chain of custody "speculative and conclusory at best," particularly given the State's "persuasive" evidence factually refuting the grounds for Ledet's defective chain-of-custody and tainted DNA analysis.[40]    The state court's factual determinations are presumed to be correct and Ledet has not rebutted those findings with clear and convincing evidence.    He has identified no basis to suppress the DNA evidence based on a chain-of-custody issue.    Thus, counsel's failure to file a motion to suppress on those grounds cannot be considered constitutionally deficient performance.

Moreover, the pertinent question here is how the omission factored into the advice offered by counsel and Ledet's decision to enter a guilty plea.    The answer is, it had little influence; regardless of whether a motion was filed, he and counsel had the chain-of-custody documents in their possession and were aware of a potential discrepancy.    In fact, Ledet candidly states that he discussed the issue with retained counsel.    Therefore, it could have factored into plea discussions and been weighed with the other evidence without a ruling on

---

[39]  ECF No. 15-1 at 824-840 (Exhibits A-G, attached to State's Response in Opposition to Petitioner's Application for PCR); ECF No. 1-3 at 25-27 (State's Response Memorandum in Opposition to State PCR application); *see also* ECF No. 18 at 19-20, State's Response to Petitioner's Federal Habeas Petition.

[40]  *See* ECF No. 15-1 at 519, 661.

an evidentiary motion for exclusion that may have proven unsuccessful.   For these reasons, the state-court decision, that Ledet failed to establish either deficient performance or prejudice by counsel advising him to enter a plea of guilty without first seeking exclusion of the DNA evidence for trial, was objectively reasonable.

As for the failure to pursue the motion for disclosure of impeaching information, the state courts flatly rejected Ledet's contention that counsel's omission constituted ineffective performance or that it prejudiced him and resulted in an unintelligent guilty plea.   While the State has an obligation to disclose material exculpatory or impeachment evidence prior to a defendant's criminal trial, the State had no similar obligation to disclose impeachment evidence before Ledet entered a guilty plea.   *See United States v. Ruiz*, 536 U.S. 622, 629-32 (2002); *Mitchell v. May*, Civ. Action No. 16-907-RGA, 2020 WL 1234950, at *6 (D. Delaware Mar. 13, 2020).   Therefore, demanding a hearing on such a motion would not only have been futile, but it would have jeopardized Ledet's ability to obtain an advantageous deal given the limited time to accept the State's plea offer.   The state courts reasonably concluded no deficient performance was established under the circumstances.

Significantly, although Ledet claims he was deprived of a final opportunity to "adversarially test the prosecution's case or make contemporaneous objections," he does not allege what relevant impeaching information the State had in its possession that was not previously disclosed, or, more importantly, that it would have led him to insist on proceeding to trial rather than accepting the plea offer.   Ledet presumably relies on the motion itself, which he asked counsel to file, as an indicator that he wanted to proceed to trial.   However,

the pretrial motion was filed over a week before the plea was negotiated and indicates nothing as far as Ledet's state of mind at the time he agreed to plead guilty. Moreover, the objective evidence in this case refutes any allegation that he would have rejected the plea offer. First, any such allegation is based on the misguided premise that the evidence against him was weak and would not be admissible at trial. Second, in connection with the negotiated plea agreement, the State amended the bill of information to enter a *nolle prosequi* on a charge of attempted second-degree murder, and as observed on direct appeal, Ledet "received a great benefit from pleading guilty in that the state agreed not to multiple bill him and the sentences were ordered to run concurrently."[41] *Ledet*, 310 So.3d at 821. Ledet has not shown "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The state-court determination finding no ineffective assistance of counsel in this instance was not contrary to or an unreasonable application of controlling federal law.

Finally, as for Ledet's request that the Court consider newly submitted evidence on federal habeas review and grant him an evidentiary hearing, he has not demonstrated his entitlement to either under federal precedent. In support of his federal application, Ledet attached an affidavit from his mother dated April 23, 2023.[42] In the affidavit, Ms. Ledet states that Ledet was adamant that he was innocent and wanted to go to trial. She retained defense counsel who asked her to speak to Ledet and "convinced him not to go to trial

---

[41] *See also*, ECF No. 15-1 at 788, Transcript of Guilty Plea Colloquy.

[42] ECF No. 1-3 at 43 (Exhibit "L" -Sworn Affidavit of Mary Ledet).

because the State was going to find him guilty and he would never get out of jail." She did

so, and on the advice of his attorney and his mother, he pleaded guilty despite his intentions

on going to trial. This affidavit post-dates his state-court post-conviction relief

proceedings and was newly filed in this Court in support of his federal habeas petition.

Ledet's memorandum in support explains that his mother only recently made the affidavit

available "after the effects of COVID-19 restrictions and financial inabilities."[43]

Ledet's newly submitted affidavit in support of his claim may not be considered on

federal habeas review. As the United States Supreme Court has explained:

> [R]eview under § 2254(d)(1) is limited to the record that was before the state
> court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in
> the past tense, to a state-court adjudication that "resulted in" a decision that
> was contrary to, or "involved" an unreasonable application of, established law.
> This backward-looking language requires an examination of the state-court
> decision at the time it was made. It follows that the record under review
> is limited to the record in existence at that same time i.e., the record before the
> state court.
>
> ... The federal habeas scheme leaves primary responsibility with the state
> courts. Section 2254(b) requires that prisoners must ordinarily exhaust state
> remedies before filing for federal habeas relief. It would be contrary to that
> purpose to allow a petitioner to overcome an adverse state-court decision
> with new evidence introduced in a federal habeas court and reviewed by that
> court in the first instance effectively de novo.
>
> ... Our cases emphasize that review under § 2254(d)(1) focuses on what a state
> court knew and did. State-court decisions are measured against this Court's
> precedents as of the time the state court renders its decision. To determine
> whether a particular decision is "contrary to" then-established law, a federal
> court must consider whether the decision applies a rule that contradicts such
> law and how the decision confronts the set of facts that were before the state
> court. If the state-court decision identifies the correct governing legal principle
> in existence at the time, a federal court must assess whether the decision

---

[43] ECF No. 1-2 at 11.

unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

*Cullen v. Pinholster*, 563 U.S. 170, 181-83 (2011) (footnote, citations, quotation marks, ellipsis, and brackets omitted).

Furthermore, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed severe restrictions on the ability of federal courts to hold evidentiary hearings in habeas corpus cases.    In discussing the restrictions, the United States Supreme Court explained the narrow exceptions governing such hearings and the purpose for the limitations:

> If a prisoner "failed to develop the factual basis of a claim in State court proceedings," a federal court may admit new evidence, but only in two quite limited situations. [28 U.S.C.] § 2254(e)(2). *Either the claim must rely on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or it must rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A). And even if a prisoner can satisfy one of those two exceptions, he must also show that the desired evidence would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the charged crime. § 2254(e)(2)(B).* Thus, although state prisoners may occasionally submit new evidence in federal court, "AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Pinholster*, 563 U.S. at 186, 131 S.Ct. 1388; *see also* [*Williams v. Taylor*, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (Michael Williams)] ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.").
>
> We have explained that a federal court, in deciding whether to grant an evidentiary hearing or "otherwise consider new evidence" under § 2254(e)(2), must first take into account these restrictions. *Shinn v. Martinez Ramirez*, 596 U. S. ––––, ––––, 142 S.Ct. 1718, 1739, ––– L.Ed.2d –––– (2022); see also *Schriro*, 550 U.S. at 474, 127 S.Ct. 1933. The reasons for this are familiar. A federal court "may never needlessly prolong a habeas case,

particularly given the essential need to promote the finality of state convictions," so a court must, before facilitating the development of new evidence, determine that it could be legally considered in the prisoner's case. *Shinn*, 596 U. S., at ––––, 142 S.Ct., at 1739 (internal quotation marks and citation omitted); see also *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."). If § 2254(e)(2) applies and the prisoner cannot satisfy its "stringent requirements," *Michael Williams*, 529 U.S. at 433, 120 S.Ct. 1479, holding an evidentiary hearing or otherwise expanding the state-court record would "prolong federal habeas proceedings with no purpose," *Shinn*, 596 U. S., at –––– , 142 S.Ct., at 1739 (internal quotation marks omitted). And that would in turn disturb the "State's significant interest in repose for concluded litigation." *Harrington*, 562 U.S. at 103, 131 S.Ct. 770. A court therefore must, consistent with AEDPA, determine at the outset whether the new evidence sought could be lawfully considered.

*Shoop v. Twyford*, 596 U.S. 811, 819-20 (2022) (emphasis added).   Ledet seeks only to show by further factual evidence that he would not have pleaded guilty, and would have insisted on going to trial, if not for the ineffective assistance of his retained defense counsel.   He plainly does not satisfy the above-quoted criteria.   This Court must review Ledet's claims under the deferential standards of review mandated in 28 U.S.C. § 2254(d)(1), viewing only the record that was before the state courts.

Accordingly, for the reasons expressed, Ledet has not shown that the state-court decision rejecting his claim that his guilty plea was the result of ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts.   Accordingly, under the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Ledet's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[44]

New Orleans, Louisiana, this ___10th___ day of ___June___, 2024.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.